UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| ENOCH HUFF, | CASE NO. 6:25-CV-145-KKC |
| **Plaintiff,** | |
| v. | **OPINION & ORDER** |
| KYLE TROSPER, *individually*, | |
| **Defendant.** | |

This matter is before the Court on Defendant Kyle Trosper's Motion to Dismiss. (R. 7–1.) Plaintiff Enoch Huff filed a response. (R. 8.) Trosper replied. (R. 9.) Thus, the motion is fully briefed and ripe for review. For the following reasons, the Court will grant the motion.

## I.    BACKGROUND

On November 19, 2021, Defendant Trosper, a Kentucky State Police Trooper, was dispatched to Knox Central High School in Barbourville, Kentucky to investigate a report of sexual assault. Plaintiff Huff's minor daughter reported to Trosper that she had been raped by Huff the previous night. (R. 1 Complaint ¶ 6.) Huff's daughter provided additional information to Trosper regarding items located at Huff's residence, including washcloths and clothing items, that she claimed were used or worn by Huff during the assault. (*Id.* ¶ 7.) Throughout the investigation, Huff maintained his innocence and complied with Trosper's requests. (*Id.* ¶ 9.) Huff alleges that Trosper was aware that Huff's daughter had previously accused Huff of sexual abuse and later recanted those allegations under oath. (*Id.* ¶ 10.)

Upon a search of the home with Huff's consent, Trosper discovered information corroborating the minor's account. (*Id.* ¶ 10.) On December 1, 2021, Huff's daughter completed a forensic interview at Cumberland Valley Children's Advocate Center, in which she stated that Huff had "extra skin on his penis." (*Id.* ¶ 13.) Huff alleges that Trosper made no effort to determine the validity of the claims regarding his genitalia. On March 13, 2022, the Kentucky State Police Forensic Laboratory returned the results from

1

the victim's sexual assault kit, which found no DNA evidence on the vaginal swabs or the external genital swabs to substantiate the claims. (*Id.* ¶¶ 13–15.) The next day, Trosper testified before the Knox County Grand Jury. Huff alleges that Trosper failed to disclose pertinent information to the Grand Jury, including: (1) the results of the forensic testing; (2) that claims were made by the victim regarding Huff's genitalia that would conclusively establish Huff's guilt or innocence; (3) that the victim had recanted similar accusations made against Huff in the past; or (4) that Huff professed his innocence throughout. (*Id.* ¶ 17.) Huff contends that had these details been included in Trosper's testimony, an indictment would not have been returned. (*Id.* ¶ 18.)

On August 13, 2024, the day his criminal trial was set to begin, the Commonwealth of Kentucky performed a cursory examination of Huff's genitalia, in which the bailiff expressed a discrepancy between the appearance of Huff's penis and the victim's description at the forensic interview in December 2021. Following this discovery, the Commonwealth dismissed the charges against Huff on August 19, 2024, twenty-nine months after the initiation of the investigation. (*Id.* ¶¶ 20–22.)

Thereafter, Huff filed this Complaint alleging false arrest, unreasonable seizure, and malicious prosecution under 42 U.S.C. § 1983, denial of due process in violation of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Kentucky state-law claims for malicious prosecution, negligence, gross negligence, and intentional infliction of emotional distress. (R. 1.) Trosper now moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

## II.    STANDARD OF REVIEW

In reviewing a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, a court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). To "survive a motion to dismiss, a complaint must contain sufficient factual matter,

2

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

### III.   ANALYSIS

A.  <u>False Arrest and Unreasonable Seizure under 42 U.S.C. § 1983</u>

Huff asserts a claim for false arrest and unreasonable seizure against Trosper, alleging violations of the Fourth Amendment under 42 U.S.C. § 1983.[1] The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *Ingram v. City of Columbus*, 185 F.3d 579, 592–93 (6th Cir. 1999). Thus, "[i]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robinson*, 185 F.3d 557, 569 (6th Cir. 1999)). Additionally, "§ 1983 does not include a statute of limitations and . . . § 1988(a) directs us to borrow the statute of limitations" from state-law tort actions. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1161 (6th Cir. 2021) (internal citations omitted). "The limitations period for bringing a claim of false imprisonment is one (1) year in Kentucky[.]" *Noble v. Huffman*, 2012 U.S. Dist. LEXIS 81207 at *5 (W.D. Ky. June 12, 2012) (citing KRS 413.140(1)(a) and (c)).

Huff argues that the statute of limitations for his false arrest claim should be tolled until the

---

[1] Count III of the Complaint alleges Defendant "wrongfully arrested, unlawfully imprisoned, and maliciously prosecuted Mr. Huff." (R. 1 Complaint ¶ 30.) However, as Defendants point out in their initial Motion, unlawful imprisonment is a Kentucky state law crime. Plaintiff does not object to Defendant's treatment of Count III as a claim for false arrest and unreasonable seizure under 42 U.S.C. § 1983. As such, the Court adopts the Parties' shared understanding.

Commonwealth dismissed the underlying criminal charges because that dismissal provided the necessary proof for his false arrest claim. However, "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007). In other words, the statute of limitations for Huff's false arrest claim must begin to accrue the moment legal process is initiated because any damage to Huff, resulting from that false arrest, would be ascertainable the moment legal process was initiated. This reflects "the standard rule that the limitations period commences when the plaintiff has 'a complete and present cause of action.'" *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)).

While Huff's Complaint omits the exact date of his release, the timeline in the pleadings nonetheless demonstrates that his claim is untimely. Huff filed his Complaint more than one year after the start of his criminal trial. Because a period of false arrest necessarily ends once an individual is released or legal process begins, any cognizable injury would inevitably predate the initiation of any legal process that follows, including Huff's trial. *See Codrington v. Dolak*, 142 F.4th 844, 892 (6th Cir. 2025). Consequently, because the trial occurred more than one year before this action was initiated, Huff's false arrest claim is barred by the statute of limitations and fails as a matter of law. Accordingly, the Court will dismiss Huff's claim for false arrest and unreasonable seizure under 42 U.S.C. § 1983.

B. <u>42 U.S.C. § 1983 Due Process Claim</u>

Huff asserts a 42 U.S.C. § 1983 claim against Trosper, contending that Trosper violated his right to due process under the Fourth, Fifth, and Fourteenth Amendments. However, Huff's Complaint fails to allege with specificity whether he suffered a violation of his right to substantive due process or procedural due process. In his Response, Huff clarified that he alleges a violation of substantive due process. (R. 8 at 5.) "Violations of substantive due process are further divided into two kinds: (1) deprivation of a particular

4

constitutional guarantee and (2) actions that 'government officials may not take no matter what procedural protections accompany them,' alternatively known as actions that 'shock the conscience.'" *Braley v. Pontiac*, 906 F.2d 220, 224–225 (6th Cir. 1990) (quoting *Wilson v. Beebe*, 770 F.2d 578, 585 (6th Cir. 1985)). Huff contends that the "deliberate deception and manipulation of the criminal process alleged by Plaintiff arises to conscience-shocking conduct that violates substantive due process." (R. 8 at 5.) "Conduct shocks the conscience if it violates the decencies of civilized society . . . [and] includes actions so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency." *Range v. Douglas*, 763 F.3d 573, 589–90 (6th Cir. 2014) (internal quotations and citations removed) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Huff alleges that Trosper omitted what Huff deemed to be relevant exculpatory evidence during his grand jury testimony; specifically, that Huff maintained his innocence, that the alleged victim had accused Huff of sexual abuse in the past and recanted those allegations under oath, and that Huff's innocence could be conclusively established by a cursory examination of his penis. (R. 1 Complaint ¶ 18.) These omissions form the basis for the conduct that Huff deems "conscience-shocking."

But Trosper is entitled to absolute immunity from any § 1983 claim based on his grand jury testimony. *See Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) ("grand jury witnesses should enjoy the same immunity as witnesses at trial . . . mean[ing] that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony"); *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) ("witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings . . . no matter how egregious or perjurious that testimony was alleged to have been."). Huff's due process claim concerns Trosper's alleged omissions in his grand jury testimony. Because Huff only supports this claim with facts surrounding Trosper's testimony, his Complaint does not allege sufficient facts to assert a due process claim. Accordingly, the Court will dismiss the 42 U.S.C. § 1983 due process claim.

C. 42 U.S.C. § 1983 Malicious Prosecution Claim

Huff asserts a 42 U.S.C. § 1983 claim against Trosper, contending malicious prosecution under the Fourth, Fifth, and Fourteenth Amendments. A prima-facie case for malicious prosecution under the Fourth Amendment requires proof:

> (1) that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute;
>
> (2) that there was a lack of probable cause for the criminal prosecution;
>
> (3) that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty . . . apart from the initial seizure; and
>
> (4) that the criminal proceeding must have been resolved in the plaintiff's favor.

*Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)) (internal quotations omitted, alterations in original).

Trosper argues that Huff's Complaint fails to establish the second element, that there was a lack of probable cause, because "[a]s a general rule, 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause.'" (R. 7-1 at 11 (citing *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) (quoting *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006))).)

Huff contends that an exception applies to the presumption of probable cause here because Trosper omitted relevant exculpatory evidence when testifying before the Knox County Grand Jury. Specifically, Huff claims that Defendant Trosper failed to disclose the following to the Grand Jury:

> (a) Mr. Huff steadfastly maintained his innocence;
>
> (b) Mr. Huff's daughter had falsely accused him of sexual assault and recanted said accusation under oath in the past; and

6

(c) Mr. Huff's guilt or innocence could be conclusively established by a cursory examination of his penis and forensic examination of items seized at his residence but neither such examination had occurred.

(R. 1, ¶ 17.)

The Sixth Circuit noted that "the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive" where:

(1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence;

(2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and

(3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony[.]

*King v. Harwood*, 852 F.3d 568, 587-88 (6th Cir. 2017); *see Martin v. Maurer*, 581 Fed. Appx. 509, 512 (6th Cir. 2014) ("[O]nce probable cause is established – here, by the grand jury indictment – the police have no constitutional duty to investigate further or to seek potentially exculpatory evidence.").

Here, the factual allegations in the Complaint relating to Trosper's testimony detail omissions before the grand jury. The Complaint also notes that Trosper was presented with Huff's daughter's firsthand account of rape, which he corroborated upon further investigation of physical evidence at the house. (*See* R. 1 at ¶¶ 6, 7, 11.) In addition to the rule that grand jury testimony is protected by absolute immunity from § 1983 claims, as discussed *supra* § III.B, none of these alleged omissions rise to the level of affirmative false statements contemplated by the *King* exception. The "'omission' of exculpatory evidence (as opposed to affirmative 'false statements') may not suffice to defeat the presumption [of probable cause]." *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) (quoting *King*, 852 F.3d at 587).

7

Indeed, "[t]he Constitution does not require prosecutors to present *any* exculpatory evidence to the grand jury." *Id.* (citing *United States v. Williams*, 504 U.S. 36, 51–52 (1992)) (emphasis in original).

Accordingly, the Court finds that Huff's Complaint fails to allege sufficient facts to negate the presumption that the grand jury indictment is evidence of probable cause. The Court will dismiss the 42 U.S.C. § 1983 malicious prosecution claim.

D. State Law Claims

A court "may decline to exercise supplemental jurisdiction over a claim … if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefield v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (citing *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)). Here, the remaining state-law claims for malicious prosecution, negligence, gross negligence, and intentional infliction of emotional distress do not warrant the exercise of supplemental jurisdiction for concerns of judicial economy. Because the aforementioned § 1983 claims have been dismissed, the Court declines to exercise supplemental jurisdiction over Huff's remaining state law claims.

**IV.   ORDER**

For all these reasons, the Court hereby ORDERS as follows:

1) Defendant Kyle Trosper's Motion to Dismiss (R. 7-1) is GRANTED;

2) Judgment will be entered contemporaneously with this Order.

This 28th day of July, 2026.



Signed By:

*Karen K. Caldwell*

**United States District Judge**